# ELIZABETH AND SYLVESTER W. BECKER v. CHARLES P. MEGAN.[1]

January 13, 1939.

Nos. 31,918, 31,919.

*William T. Faricy, Warren Newcome,* and *Alfred E. Rietz,* for appellant.

*Webber, George, Owen & Brehmer,* for respondents.

[1]Reported in 283 N. W. 401.

STONE, JUSTICE.

Two actions tried together resulted in a $3,000 verdict for Mrs. Becker and a $1,000 verdict for her husband, Sylvester W. Becker. Defendant's motions in the alternative for judgments notwithstanding or a new trial were denied except that in Mr. Becker's case plaintiff consented to a reduction of his verdict to $600. Defendant appeals from the orders denying his motions.

On the evening of May 16, 1937, Mrs. Becker came into Winona as a passenger on one of defendant's trains. She passed through its passenger station on her way to the street via the "south steps." Outside the door was a platform some seven or eight feet long and three to four feet wide. Leading up to it from the pavement at each end was a stairway of six steps, counting as the top one the terminal plank of the platform. Plaintiff, starting to descend one of these stairways, tripped over something at the very edge of the platform. She fell and thereby sustained the injuries in question.

■ Her principal claim of negligence is that there was nailed on top of the end plank of the platform an additional board or cleat. This additional piece of lumber was the obstruction over which she claims to have stumbled.

Plaintiff testified that it was there. So also did one other witness, a relative of Mrs. Becker's by marriage. The testimony of both on this point is explicit.

Just as explicit to the contrary is the testimony of defendant's station agent and repairman. The telegrapher employed at the depot also was sure that the cleat was not there. The taxi driver who saw plaintiff fall and in whose car she rode away was as familiar with the platform and steps as anybody and is emphatic in denying the existence of the additional board.

Very significant is the fact that Mr. Becker (the Beckers reside in Chicago) viewed the platform in company with his wife within a month after the accident. "She took me out there and showed it to me." His testimony seems honest and wholly candid. From it the conclusion is inescapable that at that time he had heard no suggestion from his wife or anyone else that there had ever been the additional board or any other obstruction at the top of the steps.

His testimony closed with this significant statement: "No, I wasn't looking for anything like that."

The inference is just as certain as any deduction from human conduct can be that if Mrs. Becker was conscious at the time that the cleat was the cause of her fall she would have told her husband about it at the first opportunity. Afterwards, when she took him to view the place, it is just inconceivable that she would not have pointed with emphasis to the obstruction over which she had tumbled. Or, if it had disappeared, that circumstance would at once have become the subject of animated conversation. Nothing of that kind occurred, if Mr. Becker is to be believed. Certainly he had never heard of the superimposed cleat at the time that he viewed the steps. That negative speaks with more persuasion than the affirmative testimony of Mrs. Becker and the one witness in corroboration, when it is so well fortified by the testimony of four seemingly honest witnesses, one of them the taxi man, wholly disinterested.

We cannot escape the conclusion that the evidence is in manifest preponderance against plaintiffs' case insofar as it depends on the presence of the extra board at the top of the steps. There was a question for the jury, but that does not permit us so far to abdicate our function of review as would be necessary to sustain these verdicts.

■ Added to the weakness of the evidence for plaintiffs on this essential point is the excessive amounts of the verdicts. The trial judge reduced the one for the husband by 40 per cent. It is clear that the jury exaggerated his damages in at least that very substantial proportion. While the verdict for Mrs. Becker was sustained below, it was considered liberal. We think that it was more than that.

Mrs. Becker, 39 years of age at the time of the accident, had a pronounced arthritis of much, if not all, of the spinal column. There is no claim that that condition was caused by her fall. The whole contention is that it was thereby aggravated. Doubtless it was, but there is nothing in this record to support a conclusion that her damage was anywhere near $3,000. She testified to much

pain, but at no time was there any objective symptom, and the medi-, cal testimony negatives permanence for any physical damage caused by her fall. In such a case, where the evidence of negligence is so inherently weak and so buffeted by express contradiction, it will not do to attempt final disposition of the case by a conditional reduction of obviously excessive verdicts.

"Courts must exercise much circumspection in sustaining large verdicts where no injury can be seen and where the word of the person injured is the only evidence of its extent." Levan v. C. R. I. & P. Ry. Co. 158 Minn. 69, 71, 196 N. W. 673, 674. On the authority of that case and its predecessors (see 2 Dunnell, Minn. Dig. [2 ed. & Supps.] § 2570a), we send this case back for a new trial. That course we consider unavoidable because of the conjunction of the demonstrative weakness of her case on the facts and the excessive appraisal by the jury of the damages for both wife and husband.

We have given careful consideration to plaintiffs' claim that defendant was negligent in not having its platform and steps adequately lighted. Here again plaintiffs' case is weak for reasons appearing from the record but which need not be discussed. It is enough that on the whole case, and particularly its main element of the obstruction at the top of the steps, the evidence is in such clear preponderance for defendant that the interests of justice require a new trial.

That conclusion renders unnecessary to decision any further consideration of error assigned in respect to evidence or otherwise. It may be worth while to say, however, that we consider of doubtful propriety the use of a photograph introduced by plaintiffs over defendant's objection. Some time after the accident the old platform and steps were removed and replaced by an entirely new structure. The photograph in question showed the new structure. Defendant is not in very good position to take advantage of the error, if any, in its admission. Its counsel had in court an unobjectionable photograph of the old structure as it was at the time of plaintiff's fall. (It showed no cleat atop the terminal plank of the platform.) In such a situation counsel's duty to court and the administration of justice is such that he has small hope of profiting from the use

of the best evidence which circumstances permit his adversary to procure when he does not come forward frankly with the much better and more competent evidence in his own possession. The prompt production of the good evidence under such circumstances as we have here is the better practice from the technical standpoint. Also and equally important, it is the better and nearly always the more profitable procedure from the standpoint of psychology of both court and jury.

For the reasons stated, the orders under review must be reversed and the cases remanded for a new trial.

So ordered.